### No. 2136
#### Second Circuit Appeal.

---

### ISAAC T. PLUMLEE v. AMERICAN RAILWAY EXPRESS CO.

(Feb. 20, 1925, Opinion and Decree.)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—False Arrest and Imprisonment—Par. 2, 6.**

Where a corporation had information that its customers were being overcharged and there was a shortage ascribed to its employees, turns over to its attorneys the way bills and other written documents touching on this shortage and the attorneys place the information in the hands of the district attorney, who filed an affidavit against the defendant, having him arrested. Held, the company having acted on good faith based on probable cause and without malice could not be made to pay damages for alleged false imprisonment.

(Civil Code, Art. 2315. Editor's note.)

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo, Hon. T. F. Bell, Judge.

Action by Isaac T. Plumlee against American Railway Express Company for

$2,000.00 damages claimed for alleged false imprisonment.

Defendant denies liability on the ground that it acted in good faith, on probable cause and without malice.

There was judgment for defendant and plaintiff appealed.    Affirmed.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, attorneys for defendant and appellant.

Pugh & Boatner, of Shreveport, attorneys for defendant and appellee.

REYNOLDS, J.  In this case, the plaintiff, Isaac T. Plumlee, sued the defendant American Railway Express Company, for $2,000.00 for alleged false imprisonment. Defendant denied that it caused the imprisonment of Plumlee and especially alleges that all its acts in trying to put a stop to certain dishonest practices that were being perpetrated against it and its customers were in perfect good faith, based on probable cause and without malice.

Plaintiff was arrested and placed in the parish jail where he remained for one night on a warrant sworn out by the District Attorney, L. C. Blanchard.

Prior to the date of this affidavit, J. C. Pugh, a member of the firm of Pugh & Boatner, a law firm of high reputation and unquestioned integrity, had turned over to the District Attorney certain way-bills and other written documents touching the shortage of certain of the drivers of the American Railway Express Company. Among these documents was a confession of one J. M. Shirley, one of the drivers whose conduct with that of a number of others was being investigated.

As to the affidavit made by him, the District Attorney, on pages 106 and 107, testified:

Q.  Mr. Blanchard, did you act on your own responsibility in making these affidavits?

A.  Yes, sir, I did.  I say that Mr. Boatner for this reason:  I remember Mr. Pugh came and left a lot of papers with me and we discussed the papers a while and he left and I made them.

Q.  He left you to make up your mind as to what you thought about it?

A.  Yes, sir.

Q.  Did Mr. Pugh try to bring any undue pressure or influence to bear on you?

A.  No, sir, he did not.

Q.  So far as you could observe was his demeanor such as that he wanted to fairly present what he had without argument or pressure or influence or otherwise?

A.  Yes, that is my recollection.  He just brought it in and left it there.

Q.  Did he exhibit any malice against any of these gentlemen in particular Mr. Plumlee, that came under your observation?

A.  No, sir, not as I remember.

Q.  The matter was just presented to you in the ordinary run of a day's business and no particular notice taken of it other than your investigation?

A.  No, sir, of course we have quite a number of this sort of things that come in there every day, Mr. Boatner.  Taking an ordinary day's run we have anywhere from one to fifty a day that come in there like these but they usually come in like bad checks and hand them to me and if I think it is all right later on I swear out a warrant myself and have them arrested.

Q.  You reviewed the evidence as presented in this statement of Shirley and exercising your discretion as District Attorney, you acted on that on your own motion?

A.  I did.

J. C. Pugh, as to this matter, testified, on pages 261, 262 and 264, as follows:

Q.  What was the purpose of these people consulting you, what did they want?

A.  Well, they came in and stated they had been bothered with shortages by larceny among the employees and that

they had made an investigation and that they wanted to turn over the papers to our firm and have us to look into the matter and see just what could be done with a view of stopping it. I had them to explain to me all about these tracers and so forth because I didn't understand them myself and I had them to explain the waybill tracers and after we went through them they showed shortages and with this evidence in hand I looked up the law on the subject and after that—I don't know whether it was the same day or the day afterwards—but I brought them up to the District Attorney's office.

Q. At this conference with the officers of the express company, was any decision reached as to what would be done?

A. No, sir, in fact they didn't know what could be done. They just turned over the matter to us or rather over to me as a member of the firm of Pugh & Boatner who represented the company, for advice, and to place the matter in our hands. In fact they didn't know what I intended to do about it or anything else.

Q. And I understand you brought the papers to the District Attorney's office then?

A. I brought them to Mr. Blanchard in person. I gave him all the papers that were turned over to me and explained them to him and told him he could take whatever action he saw fit in his official capacity as District Attorney.

Q. Was any conclusion arrived at during your conference with the District Attorney as to what should be done?

A. No, he promised me he would go through them and decide that later.

Q. Between the time the gentlemen came from the express company and gave you these papers and the time of these arrests, what conferences or communications, if any, did you have with the officials of the express company?

A. I am positive I did not have any conferences with them after they turned over the papers to me. As I stated they told me they had been bothered with thefts, particularly among the drivers and what was the information, after investigation, they had secured and they turned them over you might say to the legal department. They had nothing to do with

them after they turned them over to us because the responsibility was on our firm after then.

Mr. E. C. Berry, superintendent of the Louisiana Division of the American Railway Express Company, testified as to this matter, on page 237.

Q. Did you see the District Attorney?

A. I did not.

Q. Well, why did you go to Mr. Pugh's office with the papers; what was the purpose of your visit?

A. To secure legal counsel in the matter of that kind, we do that in all matters in which we feel that we need legal advice, and discussed it with Mr. Pugh or Mr. Boatner, who are our attorneys in Shreveport.

Q. The purpose was to get counsel so that you could act according to law?

A. Yes, sir, absolutely.

Q. Well, you just submitted the matter to his own judgment?

A. Yes, sir, absolutely.

This evidence, we think, goes to show that there was no undue activity or malice on the part of the American Railway Express Company in their effort to put a stop to certain dishonest practices that were being perpetrated upon its customers.

But counsel most earnestly insist that the confession of Shirley was not free or voluntary, and that it was obtained by the American Railway Express Company by improper methods and turned over to the District Attorney's office in malice towards Plumlee.

This contention as to the confession of Shirley is not that it is untrue as to him but that it was not free or voluntary; and this is based alone on the testimony of Shirley himself who admits in his evidence that he had made statements that were not true and confesses that he had retained moneys collected by him for the American Railway Express Company.

On his testimony alone we would not feel ourselves at liberty to act. Besides, his testimony is directly contradicted by Mr. Shannon, Mr. Smith, Mr. Berry and Mr. Stinson.

This confession of Shirley was first made to Mr. Stinson, Shirley's friend, a merchant for whom Shirley had worked for six years, whom Shirley had sent for and who went on his bond. Mr. Stinson was in no way connected with or employed by the American Railway Express Company.

The confession was taken down by Mr. Shannon, agent of the Express Company, at the suggestion of Mr. Stinson, was signed by Mr. Shirley and witnessed by Mr. Stinson, was later turned over to Mr. Pugh and by Mr. Pugh was turned over to the District Attorney.

At this time Mr. Shirley's transactions were being examined into along with a number of other employees of the American Railway Express Company.

Counsel for plaintiff insist that Mr. Plumlee was mentioned in the confession of Shirley and that it was because of this statement of Shirley that the District Attorney made the affidavit on which Plumlee was arrested and placed in jail. If this is true Plumlee has a grievance against Shirley, but the American Railway Express Company cannot be held responsible therefor. The confession was an admission by Shirley of his guilt and as to him was not admissible in evidence unless it was free and voluntary. But as to Plumlee it was not admissible in evidence even if it had been free and voluntary. It was hearsay as to Plumlee and under no circumstance could it be used in evidence against him. If the District Attorney filed an affidavit against Plumlee based upon the confession of Shirley that could under no circumstances be used against Plumlee, the American Railway Express Company could not be held liable for this act of the District Attorney.

Pellifigue vs. Judice, Southern Reporte advance sheets.

The American Railway Express Company had every reason to believe at least one of its customers had been overcharged.

(See evidence of Mrs. Werner, page 188.)

Q. Who said that?
A. The negro spoke up and says the charges are a dollar and a half, and I said, the driver told me it was one dollar and ten cents, and the driver says, no you are mistaken, it is a dollar and fifty cents. I did not argue with him, I supposed it was a mistake, so I got the difference of forty cents and the negro handed it to him.

It was the defendant's duty to do everything in its power legally to put a stop to this wrong being perpetrated upon its customers. In doing this it gathered all facts it could get, not with a view of having any particular individual prosecuted but to secure for its customers honest treatment. For this the Express Company should be commended and not mulcted in damages.

From all the evidence in this case we are convinced that the defendant, American Railway Express Company, acted in good faith, based on probable cause and without malice.

For these reasons, it is ordered, adjudged and decreed that the judgment appealed from be affirmed.